**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:                                    )    BAP No.    EW-17-1238-BJF
                                          )
MARK KEVIN HANNA and JENNIFER )    Bk. No.    16-03437-FPC
MCWILLIAMS-HANNA,                         )
                                          )
                    Debtors.              )
_____)
                                          )
ALLAN MARGITAN,                           )
                                          )
                    Appellant,            )
                                          )
v.                                        )    **M E M O R A N D U M**[1]
                                          )
MARK KEVIN HANNA; JENNIFER       )
MCWILLIAMS-HANNA,                         )
                                          )
                    Appellees.            )
_____)

Submitted Without Argument on March 22, 2018,

Filed - April 13, 2018

Appeal from the United States Bankruptcy Court
for the Eastern District of Washington

Honorable Frederick P. Corbit, Chief Bankruptcy Judge, Presiding

Appearances:    Appellant Allan Margitan, pro se on brief; Ian
                Ledlin of Phillabaum Ledlin Matthews & Sheldon,
                PLLC on brief for Appellees Mark Hanna and Jennifer
                McWilliams-Hanna.

Before:    BRAND, JURY[2] and FARIS, Bankruptcy Judges.

_____

[1]    This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8024-1.

[2]    Hon. Meredith A. Jury, Bankruptcy Judge for the Central
District of California, sitting by designation.

Appellant Allan Margitan appeals an order (1) denying his motion to dismiss the debtors' chapter 11[3] case and (2) confirming the debtors' chapter 11 plan of reorganization. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Prepetition events**

**1.    The parcels and the Hannas' sewage system**

The Margitans and the debtors, Mark Hanna and Jennifer McWilliams-Hanna, have been neighbors since 2002 and have been litigating various land disputes between them for the past several years. The Hannas own what is known as Parcel 2 of a 3-parcel Short Plat; the Margitans own Parcels 1 and 3 and live on Parcel 1. The Margitans have a 40-foot ingress, egress and utility easement over the Hannas' Parcel 2, which the Margitans use to access Parcel 3 — a lakeside property that contains a high-end vacation home the Margitans purchased in 2010 and remodeled for use as a rental property. In 2002, after the county approved the parties' predecessor's application for the Short Plat, a waterline for supplying potable water to the parcels was installed somewhere in the 40-foot easement.

In 2003, the Hannas obtained a permit from the Spokane Regional Health District ("SRHD") for the construction of an on-site sewage system for Parcel 2. SRHD was informed, incorrectly, that the easement was only 20 feet wide. Mr. Hanna knew prior to the system's installation that the easement was 40 feet wide, but never gave his contractor that information. Unfortunately,

---

[3]    Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

because of that error, the Hannas' septic tank and drain field was placed within the 40-foot easement in violation of Washington law.

## 2. The prepetition litigation between the parties

Although it is not entirely clear how all of the litigation proceeded between the parties, it appears that it started in 2012, when the Hannas filed a quiet title action against the Margitans in state court to resolve easement issues for the three parcels. The Margitans filed a counterclaim for intentional interference with their easement and requested that the Hannas remove their sewage system from it.

The Margitans also filed a separate administrative action with SRHD over the drain field. The Margitans' primary argument was that, because of the close proximity of the Hannas' drain field to the Margitans' waterline, the Margitans were unable to obtain a Certificate of Occupancy ("CO") for the rental home on Parcel 3 and could not rent the home as a result. The Margitans never presented any evidence establishing that fact.

SRHD ruled against the Margitans, finding that: (1) the existence of the Hannas' drain field in the easement created no imminent public health risk; (2) they had failed to establish that the Hannas' drain field was illegally within 10 feet of their potable waterline; (3) even if the waterline was within 10 feet, the public health risk was minimal; and (4) it was proper for SRHD and the Hannas to agree that relocation of the offending drain field could be delayed for a reasonable period of time. The state court dismissed the Margitans' appeal of SRHD's ruling for lack of standing, and the state appellate court affirmed.

However, the Margitans were more successful in their

litigation against the Hannas.  On August 10, 2016, the jury returned a verdict in favor of the Margitans for $422,934.00 for damages resulting from the Hannas' intentional interference with the Margitans' easement, including lost rents and emotional distress.  The state court entered a judgment on the verdict and ordered the Hannas to remove the existing drain field encroaching on the easement.

The state court later reduced the jury verdict and entered an amended judgment in favor of the Margitans and against the Hannas for $297,834.00, plus 5% interest ("Judgment").  The Hannas were still required to remove the encroaching drain field.  The Hannas appealed the Judgment; the Margitans cross-appealed.

**B.   Postpetition events**

**1.   The bankruptcy filing**

The Hannas filed a chapter 11 bankruptcy case on November 2, 2016.  Two weeks after filing their bankruptcy case, the Hannas moved for stay relief to proceed with their appeal of the Judgment.  The Hannas maintained that they had obtained design plans for the new drain field in accordance with the Judgment. They also requested a comfort order stating that the automatic stay did not prohibit SRHD from enforcing its regulatory powers to continue the drain field project, which would include collecting fees.  The bankruptcy court granted the Hannas relief from stay to proceed with the appeal and provided the comfort order for SRHD to continue its involvement with the new drain field.

**2.   The Margitans' motion for relief from stay**

A few weeks later, the Margitans moved for relief from stay to allow the state court to enforce its order requiring the Hannas

to remove their encroaching drain field from the Margitans' easement. The Margitans maintained that the Hannas were intentionally delaying the removal of their drain field and that the encroaching drain field prevented them from obtaining a CO for the rental home on Parcel 3.

The Hannas asserted that they were complying with the Judgment by installing a new tank and drain field rather than removing the existing system. The Hannas further asserted that the Margitans' refusal to turn on the water for Parcel 3 is what prevented them from getting the CO, not the Hannas' encroaching drain field.

The bankruptcy court held an evidentiary hearing on the Margitans' stay relief motion, where the primary dispute was whether the Hannas were complying with the Judgment by only installing a new tank and drain field and not removing the old, encroaching system. On an interim basis, the court ordered the Hannas to continue with installing the new drain field.

Ultimately, after another hearing where the bankruptcy court considered testimony and additional evidence from the parties, the court denied the motion, finding that: (1) the old, encroaching drain field had been decommissioned; (2) the new drain field had been installed and did not encroach on the easement; (3) the Margitans had not established that they could not get the CO under those circumstances; and (4) the regulatory agencies had stated that there may not be a problem with the water supply for Parcel 3, and that there was no requirement to remove the old drain field based on public health principles.

The bankruptcy court entered an order denying the Margitans'

stay relief motion on June 7, 2017. The Margitans did not appeal that order.

### 3. The Hannas' chapter 11 plan and disclosure statement and the Margitans' motion to dismiss

Meanwhile, the Hannas filed their chapter 11 plan and disclosure statement (the "Plan"). The Hannas proposed to pay the Margitans' claim, to the extent it was allowed, in full within 60 months of the entry of a non-appealable judgment. Between the effective date and the date a non-appealable judgment was entered, the Hannas would make payments to a secured account which would be payable to the Margitans within 30 days of entry of the judgment. If the account funds were insufficient to satisfy the judgment, the Hannas would list their residence for sale within 45 days and sell other property if needed. The Hannas would pay a 6% interest rate on the Margitans' allowed claim, which was greater than the 5% rate on the Judgment. The Hannas maintained that creditors would receive more on their claims with the Plan than they would in a chapter 7 liquidation.

In response, the Margitans moved to dismiss or convert the Hannas' bankruptcy case ("Motion to Dismiss"). In short, the Margitans argued that the case should be dismissed as a bad faith filing: the Hannas were solvent at the time of the filing; they had few unsecured creditors; and Mr. Hanna admitted at the § 341(a) meeting of creditors that the Judgment and the Hannas' inability to obtain a supersedeas bond was what led them to file for bankruptcy. The Margitans argued that the Hannas had the ability to obtain the bond based on their net worth of $379,611.77. Lastly, the Margitans argued that the Hannas were

-6-

using the chapter 11 case as a free stay and as a litigation tactic to delay paying the Judgment, as evidenced by Mr. Hanna's admission that, had they not filed for bankruptcy, the Margitans would have seized their assets to satisfy the Judgment.

In opposition to the Motion to Dismiss, the Hannas explained that the Margitans had refused their offer of real property as a substitute for a supersedeas bond. Mr. Hanna admitted that he did not attempt to purchase a bond before filing the chapter 11 case, because, based on his research, they did not have the required $300,000 in cash available to pay for one. Mr. Hanna stated that the Hannas filed the bankruptcy case because the Margitans would have begun executing on their assets, draining their bank accounts and leaving them unable to pay for the new drain field. If the Judgment had not been stayed, all creditors could have been put at risk for payment of their claims. In short, the bankruptcy filing enabled them to repay their debts in an orderly manner.

The Hannas further argued that their bankruptcy filing was not made to unreasonably delay resolution of the Margitans' claim, as evidenced by their early motion for relief from stay to proceed with the appeal of the Judgment. Moreover, the Hannas believed that the Judgment would be reversed because the Margitans provided no evidence that the separation between the Hannas' old drain field and the Margitans' waterline was less than the required 10 feet, they never proved they actually had bad water, and they never proved that there was any interference with the use of their easement.

In objecting to the Plan, the Margitans argued that it was not proposed in good faith. First, the Hannas did not need debt

-7-

reorganization and the Plan made no attempt to do that. Second, the Hannas were not adjusting their high standard of living, while the Plan adversely affected only one creditor — the Margitans. Lastly, the Margitans argued that the Hannas' lack of good faith was shown by their admission that if they prevailed in the appeal they would dismiss their chapter 11 case and use the funds in the Margitan account to pay all remaining creditors.

The Margitans also argued that the Plan was unconfirmable because it violated the absolute priority rule; if the Hannas had to sell their residence to pay creditors in full, they were paying themselves $125,000 of homestead exemption proceeds before paying the Margitans. Furthermore, the Plan was not fair and equitable because the Margitans would not be paid until they won all of the appeals of the Judgment, and they had to wait at least 60 months from the effective date plus 45 days before the Hannas were even required to list their residential and non-residential real property for sale to fund payment of the allowed claim in the event funds in the secured account were insufficient to fully pay it. Finally, the Margitans argued that it was unfair that the Hannas were using the chapter 11 case in lieu of bond while they pursued appeals of the Judgment.

In response, the Hannas maintained that the Plan did not violate the absolute priority rule because it did not provide that they would pay themselves their $125,000 homestead exemption before paying all allowed claims in full. Further, the Hannas asserted that the Plan was fair and equitable; the Margitans would fare no better in a chapter 7 scenario: the trustee could not pay any dividends to them until the state court litigation was

concluded; the trustee could not distribute the Hannas' exempt property which was available under the Plan; and the interest rate would be approximately 1.25% instead of 6%. In any event, the Hannas supplemented the Plan with the following: (1) they would deposit 401k funds (about $72,000) into the DIP Agent General Account that they could not access without a court order to fund the Plan; and (2) they would pay to have electrical conduit installed in the easement for a security cable the Margitans wished to install, if the cost was increased solely because of the proximity of their former drain field to the easement.

Not surprisingly, the Margitans voted to reject the Plan. They were the only objecting creditors.

**4. The court's ruling on Plan confirmation and the Motion to Dismiss**

Mr. Hanna was the only witness to testify at the combined hearing on confirmation of the Plan and the Margitans' Motion to Dismiss. He testified extensively as to the feasibility of their proposed Plan and how they intended to fund it. Mr. Hanna also testified that, if they were to lose the appeal of the Judgment in the state intermediate appellate court, they did not intend to appeal to the state supreme court.

After hearing Mr. Hanna's testimony and the parties' closing arguments, the bankruptcy court announced its oral ruling confirming the Hannas' chapter 11 Plan, finding that it was proposed in good faith and complied with § 1129(a) and (b). The court denied the Motion to Dismiss, finding that the Hannas had filed their chapter 11 case in good faith and that it was not filed to unreasonably deter and harass creditors.

Mr. Margitan timely appealed the bankruptcy court's order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L).  We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.    Did the bankruptcy court abuse its discretion in denying the Motion to Dismiss?

2.    Did the bankruptcy court abuse its discretion in confirming the Plan?

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's ruling on a motion to dismiss for bad faith under an abuse of discretion standard. Marshall v. Marshall (In re Marshall), 721 F.3d 1032, 1045 (9th Cir. 2013); Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167, 170 (9th Cir. BAP 1988).  We also review the bankruptcy court's decision to confirm a debtor's chapter 11 plan for an abuse of discretion.  In re Marshall, 721 F.3d at 1045 (citing Computer Task Grp., Inc. v. Brotby (In re Brotby), 303 B.R. 177, 184 (9th Cir. BAP 2003)).  In both cases, the question of "good faith" is factual, and we review a good faith finding for clear error.  Id.; In re Stolrow's, Inc., 84 B.R. at 170.  The issue of "fair and equitable" treatment under a plan of reorganization is a question of fact we review for clear error. Pac. First Bank v. Boulders on the River, Inc. (In re Boulders on the River, Inc.), 164 B.R. 99, 103 (9th Cir. BAP 1994).

The bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous.  TrafficSchool.com,

-10-

Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm on any basis supported by the record. Heers v. Parsons (In re Heers), 529 B.R. 734, 740 (9th Cir. BAP 2015).

## V. DISCUSSION

Mr. Margitan essentially disputes only the bankruptcy court's findings of fact, in particular, the court's findings as to the Hannas' "good faith." The court applied the same "good faith" standard to the questions of whether the Hannas' chapter 11 petition was filed in good faith and whether their Plan was proposed in good faith. However, the good faith standards required to file a chapter 11 petition are different from those for proposing a plan of reorganization. In re Boulders on the River, Inc., 164 B.R. at 103 (citing In re Stolrow's, Inc., 84 B.R. at 171); accord In re Madison Hotel Assocs., 749 F.2d 410, 424-26 (7th Cir. 1984). In any case, we conclude that such error was harmless; the court made sufficient findings to satisfy both good faith tests, and the record provides further support for them.

**A. The bankruptcy court did not abuse its discretion in denying the Motion to Dismiss.**

A chapter 11 petition may be dismissed for cause under § 1112(b)[4] if it appears that the petition was not filed in good

---

[4] Section 1112(b) provides, in relevant part:

Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that

(continued...)

-11-

faith. <u>Marsch v. Marsch (In re Marsch)</u>, 36 F.3d 825, 828 (9th Cir. 1994) (per curiam). A chapter 11 petition is not filed in good faith if it represents an attempt "to unreasonably deter and harass creditors" and to "achieve objectives outside the legitimate scope of the bankruptcy laws." <u>In re Marshall</u>, 721 F.3d at 1047; <u>In re Marsch</u>, 36 F.3d at 828. "Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process." <u>Idaho Dep't of Lands v. Arnold (In re Arnold)</u>, 806 F.2d 937, 939 (9th Cir. 1986); <u>Sullivan v. Harnisch (In re Sullivan)</u>, 522 B.R. 604, 617 (9th Cir. BAP 2014). Good faith depends on an "amalgam of factors," not a specific fact or facts. <u>In re Marshall</u>, 721 F.3d at 1048; <u>In re Marsch</u>, 36 F.3d at 828; <u>In re Arnold</u>, 806 F.2d at 939.

Mr. Margitan argues that filing a chapter 11 petition as a substitute for a supersedeas bond is in itself a basis for a finding of bad faith. The Hannas' ability (or inability) to obtain a supersedeas bond was a hotly contested issue. The bankruptcy court found that the Hannas' failure to obtain the bond was only one factor of the "amalgam of factors" the court can consider in determining whether a case has been filed in good faith. We agree. While Mr. Margitan cites several bankruptcy court cases within this circuit supporting his argument, neither the Ninth Circuit Court of Appeals nor this Panel has held that

---

[4](...continued)
the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

-12-

filing a bankruptcy petition in lieu of posting an appeal bond is ipso facto bad faith for purposes of dismissal under § 1112(b).

Mr. Margitan relies on Marsch. But, in Marsch, the Ninth Circuit did not specifically address the propriety of a bankruptcy petition being filed as a substitute for a supersedeas bond, noting that, given the bankruptcy court's supported finding of bad faith, it did not need to decide the issue of "whether bankruptcy laws can be used to skirt state court procedural rules in this manner." 36 F.3d at 829. Rather, the Marsch court simply upheld the court's bad faith finding as cause for dismissal, where the debtor clearly had the financial means to pay the creditor's judgment and the chapter 11 petition was filed solely to delay collection of the judgment and to avoid posting an appeal bond. Id. at 828-29.

Here, the bankruptcy court found that even if the Hannas had obtained a supersedeas bond, the Margitans would not have been able to collect on the Judgment until the appeal was finally resolved. Thus, the Hannas' bankruptcy filing was not an attempt to unreasonably deter and harass creditors; instead, they were attempting to effect a speedy, efficient reorganization on a feasible basis. Even if the Hannas could have afforded a supersedeas bond, which is not entirely clear on this record and was the Margitans' burden to prove, the inclusion of the Judgment in their Plan suggests that they filed their bankruptcy petition for the proper purpose of reorganization, not as a mere ploy to avoid posting a bond. See In re Marshall, 721 F.3d at 1048 (inclusion of creditor's judgment in debtors' plan suggested a good faith filing and not a ploy to avoid posting an appeal bond,

-13-

which they may or may not have been able to afford).

Next, Mr. Margitan argues that the Hannas' bankruptcy case was filed for the improper purpose of obtaining a stay of the state court litigation. The automatic stay under § 362 "is intended to provide debtors in bankruptcy with a breathing spell from their creditors' collection actions. And it is not unusual to encounter a chapter 11 case 'because of the crushing weight of a judgment.'" In re Sullivan, 522 B.R. at 614-15 (quoting In re Marshall, 298 B.R. 670, 683 (Bankr. C.D. Cal. 2003)). Again, the bankruptcy court found that the Hannas' petition was not filed to unreasonably deter and harass creditors; it was filed so that their creditors could be paid in an orderly fashion and without sacrificing equity. The goal of orderly payment of creditors is one of the legitimate reasons to file bankruptcy. Id. at 616.

The Margitans were very aggressive in their Judgment collection efforts and had a substantial advantage over other creditors with their judgment lien, which was obtained within the preference period and which the Hannas were seeking to avoid. The Hannas' petition not only appropriately provided them a breathing spell, it laid the ground work for another key goal underlying the bankruptcy process — leveling the playing field for other creditors. Id. at 615-16. Mr. Hanna testified that the Hannas were concerned about the Margitans executing on their liquid assets, leaving them unable to pay for their new drain field. Preventing the Margitans from seizing all liquid assets ahead of other creditors and bringing preferential transfers back into the estate for the benefit of all creditors are consistent with the primary goals of the bankruptcy process. Id. at 617.

-14-

Mr. Margitans' argument is further undermined by the fact that, just two weeks after they filed their chapter 11 case, the Hannas sought relief from stay to proceed with the appeal of the Judgment. Clearly, they were not intending to stall or delay that process by filing their bankruptcy petition. In addition, we do not overlook the fact that the United States Trustee did not support dismissal of the Hannas' case.

Finally, "'perhaps the most compelling grounds for denying a motion to dismiss grounded on bad faith is the determination that a reorganization plan qualifies for confirmation.'" In re Marshall, 721 F.3d at 1049 (citation omitted). The bankruptcy court properly considered the viability of the Hannas' Plan as weighing heavily against dismissal. See id.

Accordingly, the bankruptcy court did not clearly err in finding that the Hannas filed their chapter 11 petition in good faith, and it did not abuse its discretion in denying the Motion to Dismiss.[5]

**B.    The bankruptcy court did not abuse its discretion in confirming the Plan.**

The bankruptcy court found that the Plan complied with the § 1129(a) factors, including the § 1129(a)(3) "good faith" test. The good faith that is necessary to confirm a plan of

---

[5] Mr. Margitan argues that allowing the Hannas to file their chapter 11 petition as a substitute for a supersedeas bond is a violation of the Full Faith and Credit doctrine. The Full Faith and Credit doctrine, 28 U.S.C. § 1738, has no relevance to the question of whether filing a chapter 11 petition in lieu of an appeal bond can constitute a bad faith filing providing cause for dismissal under § 1112(b). Clearly, the Margitans are unhappy about the Hannas' bankruptcy filing, but that has nothing to do with whether the bankruptcy court gave preclusive effect to the Judgment. Thus, this argument lacks merit.

-15-

reorganization requires the plan to achieve a result consistent with the objectives and purposes of the Code. In re Marshall, 721 F.3d at 1046; In re Boulders on the River, Inc., 164 B.R. at 103. Mr. Margitan's arguments here are a bit muddled, but he appears to argue that the Plan (1) served no reorganizational purpose, only to delay payment of the Judgment, so it was filed in bad faith; (2) violated the absolute priority rule and was therefore not fair and equitable; (3) failed to meet the best interest of creditors test; and (4) was not feasible.

As to his first argument, the bankruptcy court found that the Plan enabled the Hannas to repay all of their creditors in an orderly manner. The court found that the Plan was not filed merely to avoid the need for a supersedeas bond; it was filed so creditors could be paid in full, in an orderly fashion, and without sacrificing equity. Based on the record and the authority discussed above, we see no clear error in the court's finding that the Plan was proposed in good faith. Simply because the Margitans may not be paid as quickly as they would like does not mean that the Hannas' Plan was not proposed in good faith.

As for Mr. Margitan's second argument, an individual chapter 11 debtor may cram down a plan if it complies with the absolute priority rule in § 1129(b)(2)(B)(ii). Zachary v. Cal. Bank & Tr., 811 F.3d 1191, 1194 (9th Cir. 2016). Thus, the bankruptcy court may find that a debtor's plan is "fair and equitable" to an objecting creditor only if the plan complies with the absolute priority rule. The Margitans had argued in their objection to confirmation that the Plan violated the absolute priority rule because it allowed the Hannas to receive homestead

-16-

exemption proceeds before paying creditors in full. To the contrary, the Plan did not so provide and the bankruptcy court found as much.[6] The court further found that the Plan did not discriminate unfairly and was fair and equitable with respect to each class of claims or interests that were impaired under the Plan.

Mr. Margitan also argues that the Plan violated the absolute priority rule because a "junior class" received a distribution of $47,351.93 on the effective date, while the Margitans received nothing. Not only did the Margitans not raise this issue before the bankruptcy court in objecting to the Plan, Mr. Margitan fails to identify the junior creditor who allegedly received these funds. Perhaps he is referring to the Hannas' state court attorney. However, the attorney was paid directly by the Hannas' homeowners insurance company, not with estate funds. Therefore, we find no clear error with the bankruptcy court's finding that the Plan was fair and equitable.

For his third argument, Mr. Margitan argues that he would have received more in a chapter 7 liquidation; thus, the Plan did not meet the "best interest of creditors" test under § 1129(a)(7). Mr. Margitan fails to say what amount he would have received in a chapter 7 case. In any event, the bankruptcy court disagreed, finding that in a chapter 7 scenario the trustee could not distribute the Hannas' exempt property, which was available to pay creditors in the Plan, and the Margitans were receiving 6% interest under the Plan, which they would not have received in a

---

[6] We express no opinion on whether retention of exempt property or its proceeds could violate the absolute priority rule.

-17-

chapter 7 liquidation. We see no clear error in the bankruptcy court's finding that the Plan complied with § 1129(a)(7).

Finally, as to the Plan's feasibility, the Margitans did not raise this issue before the bankruptcy court. The court found that the Plan was feasible, in that confirmation of the Plan was not likely to be followed by the liquidation or the need for further financial reorganization by the Hannas.

To demonstrate that a plan is feasible, a debtor need only show a "reasonable probability" of success. In re Brotby, 303 B.R. at 191 (citing Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352, 1364 (9th Cir. 1986)). The record establishes that the Plan met the necessary feasibility requirement under § 1129(a)(11). For example, the Hannas' net worth from the filing date of November 2, 2016 through June 30, 2017, had increased by almost $35,000. During that same time period, receipts totaled $137,260.80 and disbursements totaled $101,027.82, for a net cash flow of $36,232.98. In the event of a shortfall in cash to pay creditors in full plus interest, the Hannas will liquidate property, including exempt property. We perceive no clear error in the bankruptcy court's finding as to feasibility.

Accordingly, the bankruptcy court did not clearly err in finding that the Hannas proposed their chapter 11 Plan in good faith, and it did not abuse its discretion in confirming the Plan.[7]

---

[7] Mr. Margitan argues that the bankruptcy court exceeded its jurisdiction when it allowed the Hannas to keep their drain field (continued...)

-18-

## VI. CONCLUSION

For the above reasons, we AFFIRM.

---

[7](...continued) within the easement in violation of the Judgment, and that the bankruptcy court improperly ruled on "non-core" matters. The bankruptcy court addressed these issues in the Margitans' stay relief motion, not the Motion to Dismiss or Plan confirmation. The bankruptcy court entered a final order denying the stay relief motion on June 7, 2017. The Margitans did not appeal the order. Therefore, we have no jurisdiction over these issues and are unable to address them.